**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| LAURA NAVARRO : <br> 9237 Grace Lane : <br> Philadelphia, PA 19115 : <br>     Plaintiff, : <br> : <br> v. : <br> : <br> CORECARE BEHAVIORAL HEALTH : <br> MANAGEMENT, INC. d/b/a KIRKBRIDE : <br> CENTER : <br> 111 North 49th Street : <br> Philadelphia, PA 19139 : <br>     Defendant. : | Civil Case No.: _____ <br><br> **JURY TRIAL DEMANDED** |

---

## COMPLAINT – CIVIL ACTION

Plaintiff, Laura Navarro ("Plaintiff"), by and through her undersigned attorney, for her Complaint against CoreCare Behavioral Health Management, Inc. d/b/a Kirkbride Center ("Defendant" and/or "Kirkbride Center") alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff initiates this action contending that Defendant interfered with and violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and the Philadelphia Fair Practices Ordinance, Phila. Code §§ 9-1101, *et seq.* ("PFPO") by subjecting Plaintiff to a hostile work environment, ultimately terminating Plaintiff from her employment on the basis of both her gender (female) and her status as a victim of domestic violence, and in retaliation for her good faith reports of sexual harassment and sex discrimination in violation of Title VII and the PFPO. As a result, Plaintiff has suffered damages as set forth herein.

## PARTIES

2. Plaintiff is a citizen of the United States and Pennsylvania and currently maintains an address located at 9237 Grace Lane, Philadelphia, PA 19115.

3. Defendant Kirkbride Center is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and currently maintains a business located at 111 North 49th Street, Philadelphia, PA 19139.

**JURISDICTION AND VENUE**

4. Paragraphs 1 through 3 are hereby incorporated by reference as though the same were fully set forth at length herein.

5. On or about September 03, 2020, Plaintiff filed a Complaint with the United States Equal Employment Opportunity Commission ("EEOC") which was dually filed with the Philadelphia Commission on Human Relations ("PCHR"), thereby satisfying the requirements of 29 U.S.C. § 621, *et seq*. Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2020-05505. Plaintiff's EEOC Charge was filed within three hundred (300) days of the unlawful employment practice.

6. On August 03, 2021, the EEOC issued a Notice of Rights to Sue regarding Plaintiff's Charge stating she had ninety (90) days to file suit against Defendant.

7. At the time of the filing of this Complaint, more than one (1) year has passed since the filing of Plaintiff's PCHR Charge.

8. Plaintiff filed this Complaint within the relevant statutory timeline.

9. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

10. This action is authorized and initiated pursuant to Title VII.

11. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

12. The Court has supplemental jurisdiction over Plaintiff's city ordinance claims because those claims arise out of the same nucleus of operative fact as the Title VII claims.

13. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Defendant resides in this judicial district, doing business therein.

## FACTUAL BACKGROUND

14. Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

15. In or around July 22, 2019, Defendant hired Plaintiff into the position of Behavioral Health Technician.

16. Throughout the course of her employment, Plaintiff performed her job well, received positive feedback, occasional praise, and no justifiable discipline.

17. In or around August 22, 2019, a patient (hereinafter referred to as "Patient X") was admitted to Defendant's facility for treatment.

18. Patient X was Plaintiff's ex-boyfriend who physically abused Plaintiff during their relationship.

19. Immediately, Plaintiff informed Defendant about Patient X, specifically stating that Patient X was her ex-boyfriend who physically abused her and the fact that Plaintiff was a victim of domestic abuse/violence.

20. More specifically, Plaintiff informed Shift Director Kathy Last Name Unknown ("Kathy LNU") and Program Director Leslie Horowitz ("Ms. Horowtiz"), among other co-employees.

21. Following his admission, Patient X began sexually harassing Plaintiff.

22. In addition, Patient X began encouraging other patients to sexually harass Plaintiff.

23. By way of example, Patient X would leave Plaintiff voicemails saying, "I know you would sleep with me if I wanted you to."

24. Patient X made sexually explicit comments towards Plaintiff and subsequently told other patients the same and/or told other patients to repeat the comments to Plaintiff.

25. By way of example, Patient X told Plaintiff that "she gave great blowjobs."

26. Several other male patients stopped Plaintiff in the hallway and repeated the aforementioned comment.

27. By way of another example, Patient X falsely told several others patients that Plaintiff had "given him oral sex in the stairwell."

28. In or around November 22, 2019, Patient X screamed and berated Plaintiff in the presence of several other patients and co-employees, by calling Plaintiff, among other things, a "psycho" and "being obsessed with him"

29. In tears, Plaintiff reported this incident and again the aforementioned incidents to her Shift Directors, Amos Last Name Unknown ("Amos LNU") and Michael Macintosh ("Mr. Macintosh").

30. In response, Plaintiff was told to write out and file an incident report.

31. Plaintiff completed the incident report, and as the conduct from Patient X continued and worsened, Plaintiff subsequently ended up filing several other incident reports.

32. In the incident reports, Plaintiff made clear that Patient X had been abusive to Plaintiff in the past, that she was afraid of him, and the sexual harassment that she was experiencing.

33. In or around November 23, 2019, Plaintiff received her 90-Day performance review, whereby Defendant's Human Resources Director, Mary Mazza ("Ms. Mazza") and Director of Nursing, Carol Inskeep ("Ms. Inskeep") provided Plaintiff with positive feedback and work performance and told Plaintiff that "everyone likes you."

34. A few days later, in or around November 26, 2019, Plaintiff met with both Ms. Mazza and Ms. Inskeep and specifically informed them again about what was occurring with Patient X, despite filing several incident reports regarding the harassment.

35. During the aforementioned conversations, Plaintiff specifically reiterated the fact that she was afraid of Patient X based on how violent their relationship was, her knowledge of just how dangerous Patient X could be, and his current conduct in the workplace.

36. In addition, Plaintiff mentioned that she was considering obtaining a Protection From Abuse Order, to which Ms. Inskeep responded, "Do you think that's a good choice to make as a professional?"

37. At the conclusion of the meeting, Plaintiff requested that Patient X either be discharged or transferred.

38. Defendant did not investigate Plaintiff's complaints and did not in any way attempt to remedy the issues Plaintiff was dealing with.

39. In fact, merely four days later, in or around November 30, 2019, Patient X yet again confronted Plaintiff and, among other things, called Plaintiff a "fat, ugly cabbage patch doll" occurring yet again in front of several patients and co-workers.

40. Plaintiff again informed and reported to Defendant this conduct, specifically telling Ms. Mazza and again requesting that Patient X be either discharged or transferred.

41. In response, Ms. Mazza told Plaintiff, "Stay away from him and ignore his comments" despite being made aware of his continuous harassment.

42. By way of another example, a few days later, in or around December 3, 2019, Patient X intentionally bumped into Plaintiff while in the cafeteria and whispered threats into Plaintiff's ear, specifically saying that he was "going to beat the shit out of [Plaintiff]."

43. Plaintiff yet again informed and reported to Defendant this conduct, specifically telling Ms. Mazza.

44. On or around December 5, 2019, Patient X was granted an extension for treatment with Defendant.

45. Patient X's harassment continued on countless occasions and Plaintiff continued to file incident reports each time.

46. Defendant continued to fail to take any remedial action.

47. On or around mid-December, 2019, Ms. Mazza and Eric Last Name Unknown ("Eric LNU") called Plaintiff into Human Resources to discuss alleged grievances Patient X filed against Plaintiff.

48. At the meeting, Ms. Mazza revealed to Plaintiff that Patient X had been incessantly calling Community Behavioral Health, which upon information and belief is Defendant's primary source of funding for all patients, to complain about Plaintiff in an attempt to get Plaintiff fired.

49. On or around mid-December, 2019, Ms. Mazza and Ms. Inskeep told Plaintiff that she could no longer take patients to the cafeteria while Patient X was a patient.

50. On or around December 17, 2019, Plaintiff's co-worker, Kim LNU was suffering from walking pneumonia and plead with Plaintiff to take her patients to the cafeteria due to her inability to walk outside in the cold to get to the cafeteria.

51. Plaintiff agreed to do so and avoided Patient X who was also present in the cafeteria.

52. Plaintiff reported that she needed to take Kim LNU's patients to the cafeteria due to her pneumonia to Ms. Inskeep, to which Ms. Inskeep told Plaintiff that she "did a good job."

53. On or around December 23, 2019, Patient X was discharged from Defendant because he had reached his maximum time.

54. On or around December 27, 2019, Plaintiff suddenly and unexpectedly received a text message from Ms. Inskeep that Plaintiff was being removed from the schedule until she could meet with herself and Ms. Mazza.

55. On or around December 31, 2019, Plaintiff met with Ms. Inskeep and Ms. Mazza and was suddenly informed that she was terminated.

56. The alleged reasons for Plaintiff's termination were that Plaintiff "used profanity with a client" despite this never being discussed and/or documented and for Plaintiff bringing Kim LNU's patients into the cafeteria despite Ms. Inskeep telling Plaintiff she "did a good job" given the specifics of that situation.

57. Accordingly, Plaintiff believes and thus avers that the reasons provided for her termination were pretextual and that she was terminated on the basis of her sex/gender, her status as a victim of domestic violence, and in retaliation for her complaints of sexual harassment and a hostile work environment, in violation of Title VII and the PFPO.

58. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, earnings and earnings potential, loss of potential bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her reputation.

## COUNT I
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e, *et seq.*
## DISCRIMINATION, RETALIATION & HOSTILE WORK ENVIRONMENT

59. Plaintiff repeats and incorporates the foregoing 58 paragraphs as though the same were fully set forth at length herein.

60. Defendant employed at least fifteen (15) employees at all times material hereto.

61. Plaintiff is a female and as such is a member of a class protected under Title VII from unlawful discrimination or harassment because of sex.

62. Defendant discriminated against Plaintiff and subjected her to differential treatment on the basis of her gender/sex.

63. Defendant subjected Plaintiff to or otherwise permitted and/or allowed the existence of a hostile work environment, which was severe and pervasive, because of Plaintiff's sex, in violation of Title VII.

64. Plaintiff made good faith complaints to Defendant, which constituted protected activity within the meaning of Title VII, to which Defendant failed to take appropriate remedial action in connection thereto.

65. Plaintiff was terminated from her employment because of her sex and in retaliation for her complaints in connection thereto.

66. The sexually and retaliatory hostile work environment to which Plaintiff was subjected to adversely affected Plaintiff's psychological wellbeing and unreasonably interfered with Plaintiff's work.

67. Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

68. Because of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff suffered damages in the form of, *inter alia*, loss of past and future wages and compensation, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

b) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

c) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

d) Any verdict in favor of Plaintiff is to be molded by this Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law;

e) Pre-judgment interest in an appropriate amount; and

f) Such other and further relief as is just and equitable under the circumstances.

## COUNT II
## PHILADLEPHIA FAIR PRACTICES ORDINANCE
## § 9-1100, *et. seq*
## SEX and STATUS AS A VICTIM OF DOMESTIC VIOLENCE DISCRIMINATION, RETALIATION & HOSTILE WORK ENVIRONMENT

9

69. Paragraphs 1 through 68 are hereby incorporated by reference as if the same were more fully set forth at length herein.

70. At all times relevant hereto, Plaintiff was an employee within the meaning of the Philadelphia Fair Practices Ordinance Code ("PFPO"), § 9-1100, *et. seq.*

71. At all times relevant hereto, Defendant had at least one (1) employee.

72. Plaintiff is a female and a victim of domestic violence, both of which constitute members of a class protected under the PFPO from unlawful discrimination or harassment.

73. Plaintiff made good faith complaints to Defendant, which constituted protected activity within the meaning of the PFPO, to which Defendant failed to take appropriate remedial action in connection thereto.

74. Defendant subjected Plaintiff to or otherwise permitted and/or allowed the existence of a hostile work environment, which was severe and pervasive, because of Plaintiff's sex and because of Plaintiff's status as a victim of domestic violence, in violation of Title VII.

75. Plaintiff was terminated from her employment because of her sex, because of her status as a victim of domestic violence, and in retaliation for her complaints in connection thereto.

76. Defendant acted with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

77. Because of Defendant's unlawful acts, Plaintiff has suffered damages in the form of, *inter alia,* loss of past and future wages and compensation, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D. Pre-judgment interest in an appropriate amount;

E. Such other and further relief as is just and equitable under the circumstances; and

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issue so triable.


Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:  */s/ Michael Murphy*
Michael Murphy, Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
Attorney for Plaintiff

Dated:  October 29, 2021

12

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to the same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.